# STATE OF NORTH CAROLINA

**BRUNSWICK** County ~~FILED~~

FILED
2019 APR 11 A 10: 39
BRUNSWICK COUNTY, C.S.C.

File No. 19 CVS 741

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>B & B Crane Service, LLC<br>**Address**<br>5007 Northside Drive<br>**City, State, Zip**<br>Shallotte, NC 28470 | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |

VERSUS

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| **Name Of Defendant(s)**<br>DRAGADOS USA, INC. AND JOHN DOE | **Date Original Summons Issued**<br><br>**Date(s) Subsequent Summons(es) Issued** |

**To Each Of The Defendant(s) Named Below:**

| **Name And Address Of Defendant 1**<br>Dragados USA, Inc.<br>c/o Registered Agent, Corporation Service Company<br>2626 Glenwood Avenue, Suite 550<br>Raleigh, NC 27608 | **Name And Address Of Defendant 2** |
|---|---|

⚠️ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea Inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!** and Plaintiff's First Set of Interrogatories and Request for Production of Documents
You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and serve a copy of your written answers to the Interrogatories and Request for Production of Document upon plaintiff's attorney within forty-five
2. File the original of the written answer with the Clerk of Superior Court of the county named above. (45) days after you have been served.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| **Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff)**<br>Dennis T. Worley and Paul J. Ekster<br>Wright, Worley, Pope, Ekster & Moss, PLLC<br>P.O. Box 457 (200 S. Lewis Street)<br>TABOR CITY, NC 28463    (910)  653-2082 | **Date Issued** 4/11/19   **Time** 10:39 ☒AM ☐PM<br>**Signature** *Tracy Edwards*<br>☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Date Of Endorsement**    **Time**<br>                    ☐ AM  ☐ PM<br>**Signature**<br>☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

**EXHIBIT A**

| RETURN OF SERVICE |
|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

**BRUNSWICK** County

FILED

~~2019 APR 11~~ A 10:39

~~BRUNSWICK COUNT~~Y, C.S.C.

File No. 19 CVS 741

In The General Court Of Justice
☐ District  ☒ Superior Court Division

*Name Of Plaintiff*
B&B CRANE SERVICE, LLC

*Address*
5007 Northside Drive

*City, State, Zip*
Shallotte, NC 28470

**VERSUS**

*Name Of Defendant(s)*
DRAGADOS USA, INC. AND JOHN DOE

BY_____

**CIVIL SUMMONS**
**ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| John Doe | |

⚠️ **IMPORTANT!** You have been sued! These papers are legal documents, **DO NOT throw these papers out!** You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. **¡NO TIRE estos papeles!** Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* 4/11/19 | *Time* 10:39 ☒ AM ☐ PM |
|---|---|---|
| Dennis T. Worley/Paul J. Ekster | *Signature* | |
| Wright, Worley, Pope, Ekster | *Mary Edwards* | |
| P.O. Box 457 | | |
| Tabor City, NC 28463  (910) 653-2082 | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)** | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA       IN THE GENERAL COURT OF JUSTICE

COUNTY OF BRUNSWICK    FILED    SUPERIOR COURT DIVISION

2019 APR 11  A 10: 40

BRUNSWICK COUNTY, C.S.C.

FILE NO: 19 CVS ___741___

|  |  |  |
|---|---|---|
| B & B CRANE SERVICE, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | **(TRIAL BY JURY REQUESTED)** |
| | ) | |
| DRAGADOS USA, INC. AND | ) | |
| JOHN DOE, | ) | |
| Defendants. | ) | |

     **NOW COMES** the Plaintiff, complaining of the Defendants, and says and alleges as follows:

1.      The Plaintiff is a North Carolina corporate entity, with its principal place of business at 5007 Northside Drive, Shallotte, NC 28470.

2.      The Defendant is a foreign business entity, licensed and doing business within the State of North Carolina, and whose registered agent is Corporation Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

3.      Defendant's agents, managers, and/or superintendents on the job site were Don "Buck" Moore, Matt Levey and Tom Keys, who at all relevant times as asserted in this Complaint, were acting within the course, scope, and duties as agents, managers, and/or superintendents on behalf of the Defendant, Dragados USA, Inc.

4.      The Defendant, John Doe, (the name to be determined through discovery and substituted as hereinafter set forth) was designated and served as the flagman and signal man for the job task to be performed by the Plaintiff and at all times, was acting as an agent, representative, or employee of the Defendant, Dragados USA, Inc.

5.      On or about February 27, 2018, a representative from the Defendant, Dragados USA, Inc., requested a quote on the rental of a crane, together with a qualified operator, pile hammer driver, leads, and other equipment for the purpose of a "pile driving" project on

I-74 in Durham, North Carolina. The Plaintiff provided the first quote dated February 27, 2018.

6.  Subsequent thereto, the Defendant's representative, to-wit: Don "Buck" Moore, and the Plaintiff's representative, Bryan Powell, discussed a revision of the initial quote, thus eliminating some of the specifically-requested items. Subsequent thereto, the representative of the Defendant, Dragados USA, Inc., did, in fact, transmit information to the Plaintiff as to the desired pile hammer specifications and related weight of the piles to be driven in order for the Plaintiff to make the appropriate calculations related to the crane lifting capacity which would meet the industry safety standards.

7.  On or about June 4, 2018, the Plaintiff sent Defendant's representative a second quote reflecting a 42S Diesel Pile Hammer. (It is noted that the quote was still dated February 27, 2018 due to the Plaintiff's computerized program which was used to generate said document.) Subsequent thereto, the Defendant's representative submitted the weight and calculated capabilities of the specifically-identified crane to the North Carolina Department of Transportation and CSX Railroad regarding the project in question, in order to meet the requirements of the contract with NC DOT and CSX Railroad.

8.  Based upon the information submitted, the Plaintiff's agent determined the appropriate calculations in order to fulfill the job and to obtain the necessary permits, including, but not limited to, requesting authorizations to cross certain bridges and obtaining various roadway permits for the purpose of traveling to and from said site and to comply with the other jobsite requirements.

9.  On June 11, 2018, the Defendants advised the Plaintiff as to the specifics of the hydraulic pile driving hammer and provided the weights and dimensions of the jobsite requirements in order for the Plaintiff to calculate if all of the Defendants' prerequisite needs were within the capacity of the Grove GMK5165 crane.

10. Thereafter, on June 12, 2018, the Defendant, Dragados USA, Inc., requested the final quote[1], which provided solely for the rental of the crane, an operator, and the use of a pile hammer and leads furnished by the Defendant, Dragados USA, Inc.

11. Pursuant to the final bid proposal submitted to the Defendant on June 12, 2018, the Plaintiff was to furnish a crane and operator, truck and extendable trailer, personnel required for the assembly, disassembly, and transportation of the crane out of the

---

[1] Despite the date of February 27, 2018, an incorrect inclusion of the following language also occurred: "pile driving diesel hammer and leads."

roadway. The Defendant was required to provide its hammer, leads, and signal person for the specific job in accordance with paragraph 10 above.

12.    The Defendant, Dragados USA, Inc., acting by and through its agents and in furtherance of contract negotiations agreed on June 18, 2018 to provide the certified/qualified signal person who would be responsible for providing proper signaling for the crane operator in accordance with the customary rules, safety regulations, and OSHA directives. The Plaintiff's quote and subsequent contractual duties were modified to comply with the agreement between the parties; taking into consideration that the Defendant, Dragados USA, Inc., would provide a certified/qualified signal person. It was expected that the signal person identified would either be trained, qualified, or certified in accordance with the applicable safety practices, customs, and practices applicable to the operation of a crane. This representation and expectation was confirmed and made a part of the contract pursuant to paragraph 3 of the Terms and Conditions, which was signed off on by Tom Keys on behalf of the Defendant, Dragados USA, Inc. Section 3 required: *"Lessee agrees to provide or otherwise select competent and experienced personnel to direct the operation of the equipment, in accordance with OSHA 29 CFR 1926.1428 signal person qualifications and Lessee further agrees that the standard of care and responsibilities will be in accordance with all American National Standards Institute (ANSI) and that ASME B30.5-2007 (and as amended) shall be used when operating the equipment, specifically Chapter 5-3 Operation, as well as the OSHA 29 CFR Subpart CC Cranes and Derricks in Construction sections 1926.1400-1926.1442...Lessee may reject this operator; however, if operator is not rejected, the operator is under the Lessee's exclusive direction and control and is Lessee's agent, servant, and employee."*

13.    It is specifically understood and an accepted practice in the construction industry that the signal person is the one responsible for maintaining a visual observation of the crane and extended apparatus. In fact, the crane operator is to respond solely to the signals and commands of the signal person because of the operator's inability and difficulty to observe all functions and operations of the pile hammer apparatus from the operator's location on the crane, which is also partially obscured from the operator's view due to the structure of the pile hammer apparatus.

14.    At all relevant times hereto, the Defendant's agents (Don "Buck" Moore, Matt Levey and Tom Keys) were responsible for properly identifying a qualified, trained, certified, and capable individual whom had the responsibility to comply with the duties and responsibilities of a qualified signal person. In fact, the signal person controls the scope, lift, and details of the pile driving hammer apparatus on the project site at the 3217 Angier Avenue, Durham, North Carolina 27701 location.

15.    The Plaintiff's agent caused the B&B Crane workday documents to be submitted to Defendants' agent. (See attachment annexed hereto as Exhibit B, which was signed by the Defendants' agent, to-wit:  Tom Levey.)[2]  It is noted that the contract proposal, Exhibit A, was dated February 27, 2018; however, the same was not submitted until June 12, 2018 and was accepted by Defendant's agent, Matt Levey, on June 18, 2018.  The quote contained errors as to the date of the proposal and also indicated incorrectly that B&B Crane was "providing pile driving diesel hammer and leads."  In fact, the Defendant, Dragados USA, Inc., was provided the pile driver hammer and leads and acknowledged that the Plaintiff was only providing the operator and crane.

16.    Pursuant to the terms of the work document identified as Exhibit B signed by Tom Keys on June 18, 2018, the parties also acknowledged and agreed, pursuant to section 3, as follows:  *"If the equipment is damaged, involved in an accident, or made inoperable in any way, the Lessee shall notify Lessor in writing within 48 hours of its occurrence, specifying the extent and nature of the accident or damage.  The cost of any repair necessary to restore the equipment to said condition shall be paid by Lessee.  Any time beyond the minimum term required to make such repairs shall extend the term of this agreement to include such reasonable additional repair time as is necessary under the circumstances."*

17.    The Plaintiff, acting by and through its agents, caused the crane to be transported and properly set up at the jobsite in question on June 18, 2018 through June 19, 2018 for the purpose of driving the piles.  The Defendant, Dragados USA, Inc., and its agents on the jobsite, to-wit:  Don "Buck" Moore, Tom Keys, Matt Levey, and the identified individual signal person on said job, were acting on behalf of the Defendant, Dragados USA, Inc., as its agents, representatives, superintendents, managers, and responsible persons – all of whom were acting within the course and scope of their duties and responsibilities in providing the rigging and attachments to the Plaintiff's crane cables (*i.e. the primary and secondary winch lines to the Defendant, Dragados USA, Inc.'s pile hammer apparatus*). Further, the Defendants were required to provide the signal person during the operation of the crane.

18.    During the performance of said job, the Plaintiff operator, who was acting on behalf of the Plaintiff, caused the boom and appropriate cables to be lifted and extended allowing the Defendant, Dragados USA, Inc.'s agents to connect, rig and attach the pile driving hammer and related apparatus onto the Plaintiff's crane.  It is noted that the Defendant, Dragados USA, Inc., was originally quoted a price to include certified riggers and signal persons, which the Defendant, Dragados USA, Inc., elected not to pay for; instead, chose

---

[2] Tom Levy signed off on the document as agent for the Defendant, Dragados USA, Inc., agreeing to the terms and conditions relative to the job in question.

to use Dragados USA, Inc.'s own personnel. In making this election, the Defendant, Dragados USA, Inc., assumed full responsibility for making the correct connections between the crane's main lifting line and the auxiliary lifting line to ensure the proper operation of the pile driving apparatus. Subsequent to the "rigging of the crane to the pile driving hammer apparatus," it was the responsibility of the signal person to monitor the operation of the pile driving apparatus and to observe the cables within said apparatus in order to ensure that there was no fouling and/or hanging up of the cables within the apparatus itself and/or the shifting of the weight of the pile driving apparatus and the piles to the crane's auxiliary winch cable.

19.  During the onsite pre-project meetings and appropriate safety meetings, the Defendant, Dragados USA, Inc., acting by and through its representatives, indicated and agreed with the Plaintiff's agent that the Defendant, Dragados USA, Inc., would provide all personnel and equipment other than the crane and operator, with the understanding that the Plaintiff's operator was to work at the direction of Dragados USA, Inc.'s signal personnel. In fact, during the pre-lift meeting on the morning of June 18, 2018, the Plaintiff's operator was instructed not to do anything unless he was directed to do so by the designated Dragados USA, Inc.'s signal person.

20.  After setting two or three piles, the Plaintiff's operator was directed by Defendant's signal person to lift and hoist up on the auxiliary winch line. During this maneuver, the Dragados USA, Inc.'s designated signal person, to-wit: the individual identified as John Doe, failed to properly look, observe, and maintain a visual line of sight in order to ensure that the diesel pile hammer was free and not subject to improper operation and/or being hung up within the mechanism of the pile driving hammer apparatus. During this process, when the Defendant's agent directed the Plaintiff's operator to hoist up on the auxiliary winch, the rigging was fouled and was caught in the apparatus; thereby shifting the weight of the total hammer and external housing of the hammer causing all of the weight of the total pile driving hammer and related apparatus to be shifted to the auxiliary winch line. This shift of the weight caused the auxiliary winch line to be pulled out of plumb and pulled at an angle across the rooster sheave (which the cable normally rolls through), which, in turn, voided the proper use and weight capacity of the rooster sheave and ultimately resulted in the damage, failure, and inability of the crane to complete the task in question. In fact, the signal person, in allowing the cable to become fouled, and failing to observe the condition wherein the cables became inoperative and foul within the pile driving hammer apparatus and mechanism within the external framework of the pile driving apparatus, causing the shift of the total weight from that of just the hammer within the pile driving apparatus to that of the complete pile driving hammer apparatus.

21.	As a result of the Defendants' agent's negligence in failing to properly observe the auxiliary's winch line (which was designed solely to lift and lower the pile driving hammer within the pile driving hammer's external structure); thus causing the line to become out of plumb across the rooster sheave, which exceeded the proper use of the crane's auxiliary winch line capacity. As a result of the excess weight being applied to the auxiliary winch line cable and rooster sheave, it caused the rooster sheave to fail and sheer off the crane, in turn, damaging the boom head, sheave, and the auxiliary cable; thus putting the crane out of service. In fact, the crane would not pass an inspection and was not suited to be used and/or operated in accordance with OSHA rules and regulations, thus rendering it out of service until the appropriate parts, repairs, and other efforts could be undertaken in order to have the same properly installed by certified mechanics and documenting said repair process.

22.	The Plaintiff's crane was on the jobsite on June 18, 2018 from 6:30 a.m. until 7:30 p.m. on June 19, 2018. The crane was subsequently removed from the job site and within a reasonably short time period, the Plaintiff's agent, without waiving any claim or sums due related to the damaged crane, offered to provide a substitute crane in order to complete the job. The Defendant, Dragados USA, Inc., acting by and through its agent, rejected said offer of the substitute crane on June 28, 2018.

23.	The Plaintiff thereafter caused the appropriate invoices to be prepared and calculated regarding the initial job to be performed on June 18, 2018 and June 19, 2018. Subsequent thereto, the Plaintiff caused the appropriate invoices to be prepared reflecting the initial downtime, cost of repairs, and other expenses incurred regarding the damage to the crane on June 19, 2018. Plaintiff immediately ordered the parts in an effort to repair the crane. The crane was repaired on or about September 6, 2018. See attached invoice numbers: 4789, 5811, 5144. The total amount of the Plaintiff's bill for services performed, repairs, and related downtime is Two Hundred Thirty-Five Thousand, Eight Hundred Four and 88/100 Dollars ($235,804.88). (See Exhibit C annexed hereto).

24.	The Plaintiff has made a demand upon the Defendant, Dragados USA, Inc.; however, said Defendant has failed and refused to pay the same.

## FIRST CAUSE OF ACTION

25.	The allegations above set forth are incorporated by reference.

26.	There exists a contract and agreement between the Plaintiff and Defendant, Dragados USA, Inc. Reference is made to Exhibits A and B, being the proposal and job worksheet documents executed by Defendant Dragados USA, Inc.'s agent.

27.   In accordance with said contract and agreement, the Plaintiff is justly due and owing the sum of Two Hundred Thirty-Five Thousand, Eight Hundred Four and 88/100 Dollars ($235,804.88).

## SECOND CAUSE OF ACTION
## NEGLIGENCE

28.   The allegations set forth above are incorporated by reference.

29.   The Plaintiff's crane was damaged due to the negligence and failures of the Defendant, Dragados USA, Inc., and the Defendant's agents on said occasion in that the Defendant and its agents were negligent on said occasion as follows:

(a)   The Defendant and its agents, specifically the designated signal person, acted in a careless and reckless manner; failed to properly observe, maintain due diligence, and visual observations over the operation of the pile driving apparatus including the hammer that operates within the pile driving apparatus framework; thus allowing the leads and cables to become foul – shifting the complete load of the pile driving apparatus to the auxiliary winch of the Plaintiff's crane and which resulted in the damage to the Plaintiff's crane, boom, and specifically the auxiliary winch rendering the same inoperable until the repairs could be made on the same.

(b)   The Defendant and its agents failed to provide a certified and properly trained signal person in accordance with the construction industry's practice and OSHA's rules and regulations, American National Standards Institute, and operation of a crane, which requires that the crane operator completely adhere to and follow the directives of the signal person, which was a representative and agent of the Defendant, Dragados USA, Inc.

(c)   The Defendant and its agents, employees, superintendents, and supervisors, failed to properly train, identify, and select a qualified first person to serve as signal person to perform the assigned task and failed to provide the necessary oversight and supervision of said employee as necessary to comply with the applicable OSHA and appropriate safety requirements and standards, together with the contractual provisions set forth in the contract.

(d)   Such other and specific acts of negligence and failures as which will be set forth at the trial of this action, clearly demonstrating the negligence and inadequate

conduct of the Defendant, Dragados USA, Inc., and its agents acting on said occasion.

30. As a result of the negligence of the Defendants as above set forth, the Plaintiff's equipment was damaged, rendered useless, and was taken out of service, and required the subsequent repair and downtime associated with the damage caused by the Defendant, Dragados USA, Inc., and its agents.

31. Plaintiff's damages exceed the sum of Twenty-Five Thousand Dollars ($25,000.00).

### THIRD CAUSE OF ACTION
### DECLARATORY RULING

32. The above allegations are incorporated by reference.

33. The Plaintiff asserts that the Plaintiff is entitled to a determination by the Court and Fact Finder as to the amount of damages that the Plaintiff is entitled to recover.

34. The Plaintiff is an aggrieved party and is entitled to assert a claim with the Court.

35. There exists a controversy and claim between the parties hereto and the Plaintiff asserts that the Plaintiff is entitled to recover under the contract or in a claim based upon negligence for the damages to the Plaintiff's crane, loss of use, and repair costs from the date in which the Plaintiff's crane was damaged until the repairs were completed on September 6, 2018.

WHEREFORE, the Plaintiff prays the Court as follows:

1. The Plaintiff have and recover of the Defendants, jointly and severally, judgment in excess of Twenty-Five Thousand Dollars ($25,000.00), together with costs, reasonable attorney fees, interest, and other damages which the Plaintiff is entitled pursuant to a breach of the Plaintiff's contractual provisions.

2. In the alternative, the Court declare the respective rights and interest of the parties hereto and to allow the Plaintiff to recover based either upon a contract claim or in the alternative, a negligence claim, wherein the Plaintiff is allowed to recover a judgment for damages in excess of Twenty-Five Thousand Dollars ($25,000.00).

3.     The Plaintiff have and recover costs, reasonable attorney fees, interest and for such other and further relief that the Court deems just and proper.

This the ___*1*___ day of April, 2019.

> WRIGHT, WORLEY, POPE, EKSTER & MOSS, PLLC
> Dennis T. Worley, Esq.
> Paul J. Ekster, Esq.
> Attorneys for the Plaintiff
> P.O. Box 457
> Tabor City, NC 28463
> (910) 653-2082
>
> By:_____

STATE OF NORTH CAROLINA     )
                            )
COUNTY OF BRUNSWICK         )          VERIFICATION


        TIMOTHY BRYAN POWELL, Manager of Plaintiff, B & B Crane Service, LLC,
after first being duly sworn, deposes and says as follows:

        That he has read the foregoing Complaint and that the same is true to the best of his
knowledge except as to those matters stated therein on information and belief, and as to those matters,
he believes the same to be true.

                                        _____ (SEAL)
                                        Timothy Bryan Powell, Manager




SWORN TO and subscribed before me,

this  11  day of April, 2019.

_____ (SEAL)
Notary Public

My commission expires:  5|14|23



# B & B Crane Service, LLC
5007 Northside Dr.
Snellette, NC 28470
910-755-5668
Estimator • 910-755-5668 • office@bandbcraneservice.com




## PROPOSAL

### Customer Information

| | |
|---|---|
| Customer: Dragados USA | Contact: Buck Moore |
| Phone: 212-779-0900 | Phone: 919-717-1760 |
| Date: 2/27/2018 | Cell: |
| Quote #: 180227-BP-0662 revision 1 | eMail: dmoore@dragados-usa.com |

### Job Information

| | |
|---|---|
| Job Date: 6/18/2018 | P.O. Number: |
| Jobsite: | Jobsite Contact: |
| Address: Durham, NC | Phone: |
| | Fax: |

### Job Description

Job Description: B&B Crane Service proposes to furnish a crane and operator, pile-drive diesel hammer and leads, truck with extendable trailer, and personnel required for the assembly, disassembly, and transportation of the crane out of the roadway.

| | | |
|---|---|---|
| Obstruction: | Load Dimensions: | |
| Distance from: | Load Weight: | |
| Distance in: | Lift Radius: | |
| Info provided by: Customer | Notes: | |

### Rates

| | | |
|---|---|---|
| **165T Crane & Operator** | | |
| Daily Minimum: 10 hours | $350/hr | |
| Overtime Rate | $387.50/hr | |
| Permit | | $75.00 |
| Freight In | | $1,000.00 |
| Freight Out | | $1,000.00 |
| **Drivers Needed for Crane Assembly/Disassembly/Transportation** | | |
| Hourly rate is per driver. Drivers will run concurrent with the crane. | | |
| Daily Minimum: 10 hours | $30/hr | |
| Per Diem | | $130.00 |
| Tractor with Stretch-Deck Trailer | $1,500/day | |
| 5% Fuel Surcharge | | |

**NOTE:**
Cancellation of services must be given with a 24 hour advance notice. If not you will be charged the minimum rates.
Quotes are based on availability and are also good for thirty days.
Subject to sales rep visit and site evaluation.
Does not include tax where applicable.

**TERMS & CONDITIONS**

1. B&B Crane Service, LLC will not be held responsible for any damage to driveways, sidewalks, asphalt parking lots, curbs, landscaping, or other visible site improvements associated with crane access and set-up, or damage to any underground utility systems including, but not limited to sewers, water lines, irrigation, gas, telephone, and cable television. Unless otherwise specified in this proposal, customer shall be responsible for locating and identifying all underground utilities prior to B&B Crane Service, LLC's arrival on site. Customer is required to inspect and prepare jobsite conditions in accordance with OSHA regulations and provide a firm, level and stable area(s) upon which the equipment and any assist equipment will be assembled and disassembled and operated to support equipment and load weight.
2. This quote is based on the information provided by the customer and was made subject to equipment availability and credit approval.
3. Customer is required to execute our standard form of equipment rental agreement which contains additional terms and conditions.
4. If this quote is for a bare rental, the rental rates exclude all applicable taxes, fuel, service maintenance and insurance, which are the customers responsibilities
5. If using a credit card for payment there will be an additional 4% processing fee added to invoice.
6. Customer to provide free and clear access to the work areas without delays.
7. B&B Crane Service, LLC cannot control nature and shall not be responsible for any down time due to nature and/or weather conditions, strikes, unsuitable site conditions, or any delay caused by others at the jobsite. Should our work be delayed or suspended through no fault of our own, customer will be responsible for equipment rent and our labor at a standby rate.

PLAINTIFF'S EXHIBIT A

8.B&B Crane Service, LLC will provide standard rigging only. Specialty rigging is to be provided by the customer, unless otherwise noted in this quotation.

9.Customer is responsible for providing rigger and signal personnel. If this quote is for bare rental the customer is responsible for providing a competent and qualified equipment operator.

10.Customer is required to observe minimum clearances and to follow safety procedures with respect to use of the equipment near or around power lines in accordance with OSHA.

11.Customer is responsible for any required crowd or traffic-control measures, street permits, barricades, re-routing of traffic, flagmen, lighting, and utilities control and procuring at its own expense all necessary permits and clearances required in connection with the foregoing, as well as complying with all FAA laws and regulations.

12.Customer is required to arrange and pay the cost of any special inspections or certifications with respect to the equipment, and any required training, orientation, and /or testing of our employees for the project.

13.It is the customer's responsibility to provide an onsite foreman or supervisor to supervise and control all customer provided laborers.

14.Overtime is an additional $57.50 per hour per crane personnel and crane overtime rates are based on the size and type of crane on the job, unless stated otherwise in proposal. Quoted proposal rates take precedence.

15. Static Assist apply to all days that a crane is left onsite between work periods, unless otherwise noted in the agreement. Rates are based on size of crane and will be as follows: $500 per day for 40 Ton and below, $800 per day for 80 Ton and below, $1,200 per day for 120 Ton and below, $1,500 per day for 160 Ton and below, $2,500 per day for 300 Ton and below, $3,500 per day for a 400 ton and below and $4,500 per day for 450 Ton and greater.

16. Regular hours are from Monday-Friday, 7:00am-3:00pm. Over time rates apply 3:00pm-7:00am, after 8 hours, all Saturdays. Double-time rates apply on all Sundays and all holidays, with a (4) hour minimum.

17.Price is portal-to-portal.

18.Sunday and night time travel is not allowed on cranes larger than 90 ton capacity. Any job that takes place on a Sunday or after sunset will incur additional travel time in and out due to these restrictions by the DOT.

19.For all on-highway jobs a 8 hour minimum per day will apply on machines 23 ton to 110 ton, and a 12 hour minimum per day will apply on machines 120 ton or greater.

20.Any applicable overnight and per diem expenses will be charged at the rate of $130.00 per day per man.

Should you have any questions, please feel free to call.

21. Cancellation of the crane must be given 24 hours advance notice in writing. If not, you will be charged for the minimum rate for the crane and/or the minimum for the crew.

22. Indemnification. To the fullest extent permitted by law, Contractor hereby agrees to save, defend, indemnify and hold harmless B&B, its respective officers, directors, representatives, agents, and employees from any and all claims, suits, fees, judgments, premiums for bonds, damages, attorneys' fees, court costs arising out of or in part and in any manner from any injury, death, or any claim of any third party resulting from the acts, omissions, breach, or default of Contractor, its officers, directors, agents, employees, or subcontractors in connection with the work undertaken under this contract and/or the performance of any portion of the work under this contract. Contractor will defend and bear all costs of defending any action or proceedings brought against B&B arising out of such acts, omissions, breach, or default, together with any claim relative to wage and hour and the payment of any employee taxes, other tax and/or any claim asserted by any regulatory authority which challenges the independent contractor status of the Contractor herein. Contractor further agrees to defend, indemnify and hold harmless B&B, its respective officers, directors, representatives, agents, and employees, from and against any and all liabilities which may be asserted by an employee or former employee of Contractor and from and against any and all liability arising out of the Contractor's violation of any law, ordinance, regulation, bids or other legal requirement or Contractor's failure to comply with the terms of this agreement. The indemnity obligations at the Contractor shall survive termination or expiration of this agreement and shall remain in full force and effect. Further, the Contractor shall defend, indemnify and hold harmless B&B, its respective officers, directors, representatives, agents, and employees from all loss and claims filed or asserted against B&B, its officers, directors, agents, and employees of against B&B's property or facility for property performed or materials or equipment furnished by Contractor, his/her/their subcontractors and suppliers of any form from all losses, demands, and causes of action arising out of any such lien or claim. Contractor shall promptly discharge or remove any such lien or claim by bonding, payment, or otherwise, and shall notify B&B promptly upon removing such lien. If Contractor does not cause such lien or claim to be discharged or removed by payment, bonding, or otherwise, B&B shall have the right (without any obligatory obligation) to pay all funds necessary to satisfy such discharge or release and to attach all amounts so paid from any amounts due to Contractor. Contractor's obligation to indemnify against any attorney's fees, costs, or expenses in connection with the defense of any claim or cause of action, shall be construed as a separate item of indemnification that shall be absolute regardless of whether such claims or causes of actions are invalid, groundless, or arise from the sole or partial negligence of any indemnitee.

23. Termination. Should Contractor at any time fail to comply with the terms and provisions of this agreement, the specific specifications and conditions of any project, or a term contained in this general provisions or otherwise expressed by the contract, fails in any respect to prosecute the work covered by this agreement with promptness and diligence, fails to perform work of the quality required by the contract, or fails to correct a defect as asserted by B&B within the relevant time period, B&B may in any of such events at B&B's option, terminate the Contractor for the work under this agreement and shall have the right to re-enter upon and premises and take possession for the purpose of completing the work contemplated hereunder. Contractor shall not be entitled to receive any further payment, but shall nevertheless remain liable for any damages which B&B may incur. If the expenses incurred by B&B in completing the work exceed the unpaid balance, Contractor shall pay B&B the difference, together with all other damages incurred by B&B as a result of Contractor's default. B&B further reserves the right at any time, with seven (7) days written notice to Contractor, to terminate this agreement for the convenience of B&B for any reason and without any default under this agreement. Upon said termination, the Contractor shall be entitled to receive as compensation the actual common, necessary, and reasonable costs of performing the work to the date of said termination as determined by B&B. Contractor shall make records available to B&B. In no event shall any balance due under the terms hereof exceed the total contracted amount.

Acceptance of Proposal:
The above prices, specifications, and conditions are satisfactory and are hereby accepted. You are authorized to perform the work as specified.

Customer Signature Date

Quoted by:



## B&B Crane Service LLC
5007 Northside Dr • Shallotte, NC 28470
www.bandbcraneservice.com • office@bandbcraneservice.com
ph: 910-754-9405 • fax: 910-754-9381
Estimator • 910-755-5668 • office@bandbcraneservice.com

Customer: _Dragados USA_  Job Start Date: _____

Billing Address: _____  Job PO Number: _____

Contact Name: _____  Salespeople: _____

Job: _~~Stringy~~ H. Poling_  Depart: _____

Contact: _____  On Site: _____

Address: _____  Est. Duration: _____

_____

Directions: _____

Description: _____

Comments: _____

Crane: _____ Config: _____ Rigging: _____

Special Instructions: _____

_____

_____

**HAVE SIGNED AT START OF JOB**

**The terms and conditions governing this rental are understood and agreed to:**

We accept no responsibility for damage to pavement, concrete, asphalt, or underground utilities.
Customer Initials: _TK_

Signature: _____  Date: _____

| Date | Left Yard | Arrived Job | Left Job | Arrived Yard | FOR OFFICE USE ONLY | | |
| | | | | | Lunch | Initials | Total Hours |
|---|---|---|---|---|---|---|---|
| 6-18-18 | 6:30 AM | 7:30 AM | 10 PM | 11:00 PM | | TK | 14.5 hr |
| 6-19-18 | 6:00 AM | 7 AM | 6:30 PM | 7:30 PM | | TK | 11.5 hr |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

16.5
13.5

Downtime Description: _____

Comments: _____

**HAVE SIGNED AT END OF DAY**

Signature: _TPM Keyes_  Date: _6-18-18_

### Terms and Conditions

TERMS AND CONDITIONS OF CONTRACT (NC)

**1. PARTIAL INDEMNIFICATION** -- Lessee agrees to partially indemnify and save Lessor, its employees and agents harmless from claims for death or injury to persons, including Lessor's employees, of loss, damage or injury to property, including the equipment, arising in any manner out of Lessee's operation. Lessee's duty to partially indemnify hereunder shall include costs or expenses arising out of claims specified herein, including all court and/or arbitration costs, filing fees, attorneys' fees and costs of settlement. Lessee shall not be required to indemnify Lessor for Lessor's own negligence. It is hereby agreed that Lessor's liability for damage caused by Lessor's negligence shall be limited to the amount of Lessor's liability insurance. The partial indemnification obligation under the above paragraph shall not be limited in any way by any limitation on the amount or type of damage, compensation, or benefits payable by or for the Lessee under worker's compensation acts, disability benefit acts, or other employee benefit acts. The Lessee's

obligations hereunder shall further not be limited by the amount of its liability insurance, and the purchase of such insurance for Lessor shall not operate to waive any of the above obligations. This provision is separate and distinct from any other provision or paragraph in this contract, including any provision or paragraph concerning indemnification and procurement of insurance. If this paragraph is declared invalid, then all other paragraphs of this contract shall stand. Furthermore, as part of Lessee's additional obligations hereunder, Lessee shall bear the cost of any investigation or adjustment (including but not limited to, attorneys' fees and costs, private investigators'/adjusters' fees and costs, experts' fees and costs, costs of storage and down time for inability to use the equipment, and costs of testing of property, equipment, or other items) initiated by the Lessor, Lessor's insurance carriers or Lessor's third-party adjusters into any accident of any kind, when such accident, or occurrence happens, involving directly or indirectly the leased equipment, whether or not such accident involves personal injury, death, or damage to the leased equipment or other property or all of these.

2. INSURANCE –The Lessee agrees to purchase the following insurance coverage's prior to the equipment's arrival on the job site. The Lessee shall procure the following coverages for Lessor: a.) worker's compensation and employer's liability insurance, with limits of at least the statutory minimum or $1,000,000, whichever is greater; b) primary non-contributory commercial general liability insurance on an occurrence basis, including bodily injury and property damage coverage's with minimum limits of $1,000,000 per occurrence and $2,000,000, in the aggregate; c) excess/umbrella non-contributory insurance in the amount of $5,000,000 and Lessee's primary and excess/umbrella policies must be endorsed so that they are primary and non-contributory to all of Lessor's insurance policies; d) inland marine/all-risk physical damage insurance, on a primary non-contributory basis, to cover the full insurable value of the equipment, including any boom or jib, for its loss or damage from any and all causes, including, but not limited to, overloading, misuse, fire, theft, flood, explosion, overturn, accident, and acts of God occurring during the rental term, for the greater of $1,000,000 or the valuation of the equipment listed on the front page of this contract, and the parties agree that this is the actual value of the equipment for the purposes of fixing the equipment's insurable value; e) all policies are to be written by insurance companies acceptable to the Lessor; f) the Lessor and all affiliated partnerships, joint ventures, corporations and anyone else who Lessor is required to name as an additional insureds, are to be included as additional insureds on all liability insurance policies, including excess/umbrella policies (ISO Form CG 20 10 10 01 and ISO CG 20 37 10 01 must be used); Lessee shall name Lessor as a Loss Payee on all insurance policies, and Lessee shall provide all insurance certificates to Lessor when requested; g) all policies shall be endorsed to require the insurer to give thirty (30) days advance notice to all insured's prior to cancellation; h) all of Lessor's, and anyone Lessor is required to insure, policies are excess over all of Lessee's policies. In the event of loss, proceeds of property damage insurance on the equipment shall be made payable to Lessor. Lessee's agreements to indemnify and hold Lessor harmless from any liability, damage and loss are in addition to, and not an alternative to, these insurance provisions, and the purchase of any of the above coverages shall not operate to waive any of the above indemnity provisions. To the extent that the Lessee may perform under this lease without obtaining the above coverages, such an occurrence shall not operate, in any way, as a waiver of the Lessor's right to maintain any breach of contract action against the Lessee. Lessee hereby agrees to waive any and all rights of subrogation and any and all lien rights (including those arising from worker's compensation/employer's liability policies or other employee benefit programs, commercial general liability policies, or similar policies) which may accrue to it or its insurers. This shall include, but not be limited to, rights of subrogation and lien rights. The Lessee understands that this waiver shall bind its insurers of all levels, and agrees to put these insurers on notice of this waiver and to have any necessary endorsements added to the insurance policies applicable to this lease.

3. OPERATION OF EQUIPMENT – It is expressly agreed by and between the parties hereto that the equipment and all of Lessor's operating, repairing, or maintaining and assembling, or dismantling the equipment are under the exclusive jurisdiction, supervision, and control of Lessor under this lease. It shall be the duty of Lessee to give specific instructions and directions to all persons operating, repairing and maintaining the leased equipment. Lessee agrees to provide or otherwise select competent and experienced personnel to direct the operation of the equipment, in accordance with OSHA 29 CFR 1926.1428 signal person qualifications and Lessee further agrees that the standard of care and responsibilities will be in accordance with all American National Standards Institute (ANSI) and that ASME B30.5-2007 (and as amended) shall be used when operating the equipment, specifically Chapter 5-3 Operation, as well as the OSHA 29 CFR Subpart CC Cranes and Derricks in Construction sections 1926.1400 – 1926.1442. Lessee specifically agrees that the Lessor has absolutely no control over any person operating or assisting in operating, repairing, or maintaining the leased equipment. Lessor may provide an operator with the equipment. Lessee may reject this operator; however, if operator is not rejected, the operator is under the Lessee's exclusive direction and control and is Lessee's agent, servant, and employee. The lease payments made by the Lessee shall include the operator's wages, even though the operator's wages may be disbursed by the Lessor. This lease is upon the agreement of the parties that Lessor has no right to replace or substitute personnel except at the direction of and with the approval of Lessee and that the Lessee shall have the right to control, including the right of termination, and shall be deemed to have exercised that right as to all details or operation of the leased equipment and personnel the Lessee selects to operate the leased equipment. If the equipment is damaged, involved in an accident, or made inoperable in any way, the Lessee shall notify Lessor in writing within 48 hours of its occurrence, specifying the extent and nature of the malfunction, damage. The cost of any, all, or necessary to restore the equipment to said condition, or like condition. Lessee. Any time beyond the minimum term required to make such repairs, shall extend the term of this agreement to include such reasonable additional repair time as is necessary under the circumstances. Time is of the essence on this lease and all its provisions. Lessor's failure to require strict performance by Lessee of any of the lease provisions, or Lessee's acceptance of late or partial performance hereunder, shall not constitute a waiver of any prior defaults of Lessee, nor of Lessor's rights under this agreement. This lease shall be binding upon and shall inure to the benefit of the parties and their successors, administrators, executors, trustees and assigns. This agreement shall be interpreted according to the laws of Lessor's location stated on the front page. This agreement shall be interpreted fairly and reasonably and neither more strongly for nor against either party. THIS CONTRACT SHALL BE IN EFFECT FOR A DURATION OF ONE YEAR FOR THIS OR SIMILAR EQUIPMENT OR UNLESS EXPRESSLY TERMINATED IN WRITING BY Lessor. In the event that the Lessee loans, sublets or allows a third party to use the crane and the services of the operator, Lessee agrees to have said third party sign and agree to the terms of this contract.

**4. CONDITIONS –GROUND/POWERLINES/RIGGING–**The Lessee hereby agrees that it will assume all responsibility for the ground or soil conditions in the area where the crane is to be stored, parked or operated. The Lessee shall perform or have performed all necessary inspections or testing to determine the nature of the ground or soil and its ability to support the crane while in operation or otherwise. If the ground or soil condition is such that it cannot support the crane, the Lessee shall take all necessary measures to ensure that these conditions are remedied prior to the crane being placed on that ground or soil. These measures include, but are not limited to, the provision of proper shoring or cribbing or other measures. Lessee assumes all responsibility to protect the equipment and persons in or around the equipment from the danger of power lines. Lessee shall not expose the equipment or any persons in or around such equipment to the danger of energized power lines. All power lines in the work area shall be identified prior to the work beginning. All power lines are to be de-energized prior to the equipment being operated in or around such power lines. Lessee shall contact the local electric utility or other such authorized entity to arrange to have the power lines de-energized prior to beginning work. Even if power lines are de-energized, Lessee shall keep the equipment clear of such power lines at the distances required by OSHA, ANSI and any other safety regulations or standards. If it is not possible to de-energize power lines, then the Lessee shall be responsible for the insulating of any power lines, the grounding of all equipment and will be required to use rigging or other equipment designed to prevent electrocution. Lessee is required to provide any and all rigging to be used with the equipment. If chokers, slings, straps, chains, hooks, spreaders, fittings, rope or wire, etcetera; are loaned to the Lessee by the Lessor for the Lessee's convenience, and is solely at the Lessee's responsibility. Lessee assumes responsibility for any defects in any rigging, whether the property of Lessee or otherwise. Lessee assumes the responsibility for damage to any load on hook due to a failure of the rigging. Lessee assumes the responsibility for the method of rigging and agrees that all persons involved in the rigging process are qualified according to OSHA's definition 1926.1401 and are under Lessee's direct supervision and control.

**5. NO RELIANCE ON LOAD MEASURING DEVICE --** If any crane has been fitted with a load measuring device, the Lessee hereby acknowledges and agrees that the Lessor has made no warranties or representations whatsoever with respect to the ability of the said load measuring device to accurately or consistently measure the weight of loads being lifted by such crane. The Lessee further acknowledges and agrees that it is the responsibility of the Lessee to independently determine the weight of every load to be lifted by any crane comprising all or portion of the equipment so as to ensure that any such load measuring device shall be used as an operator-aide only. As well, the Lessee acknowledges and agrees that if he relies in any way whatsoever on any load measuring device that he does so completely at his own risk.

**6. AUTHORIZED SIGNATURE -** In the event this agreement has been executed on the reverse side by an individual on behalf of a corporation or other business entity, the person whose signature is affixed hereto and the company for which the individual has signed this agreement represent to Lessor that the individual signing has full authority to execute this agreement on behalf of said corporation or other business entity.

**7. STORAGE OF EQUIPMENT -** Lessor shall not be liable for any loss or injury to Lessee's property stored in Lessor's yard, and it is further understood and agreed to that Lessee's property/equipment stored is not insured by Lessor against loss or injury, however caused. Lessee is responsible for maintaining insurance coverage on a first party basis to cover the goods/equipment/machinery stored with Lessor.

**8. TERMS OF PAYMENT -** Full payment for all charges is due upon billing. Accounts not paid within 30 days will be subject to a service charge of 1 1/25 per month. This is an Annual Percentage Rate of 18%

**9. EXCUSE OF PERFORMANCE -** Any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, inability to obtain or materials or reasonable substitutes thereof governmental action, domestic or foreign, riot, civil commotion, fire or other causes beyond the reasonable control of Lessor shall excuse Lessor's performance for a period equal to such prevention, delay or stoppage.

**10. CONFORMANCE TO ALL LAWS –** Lessee agrees to use the equipment in strict compliance with all applicable rules, laws, regulations, and orders.

**11. NO OTHER AGREEMENT –** Except as otherwise mutually agreed in writing, this document is the complete agreement of the parties and supersedes all other agreements or understandings, written or oral.

# DRAGADOS USA

## PURCHASE ORDER

Date: 6/13/2018

Dragados USA

Project: DURHAM EAST END CONNECTOR

Phone: (919) 200-7020 - RALEIGH OFFICE

Contract: C203394
Job: 008-004
Purchase Order: DU-OP-832

# Control:
Ordered By: Brendan Hotchkiss

*New Billing Address*

| | | |
|---|---|---|
| **VENDOR**<br>Name: B&B Crane Service, LLC<br>Address: 5007 Northside Drive<br>Shallotte, NC 28470<br>919-755-5668<br>office@bandbcraneservice.com | **BILL TO**<br>Name: DRAGADOS USA<br>Address: 7820 ACC BLVD, Ste. 210<br>DURHAM, NC 27617 | **TRANSPORT TO:**<br>Name: DRAGADOS USA<br>Address: 303 US 70 SERVICE RD<br>DURHAM, NC 27703 |

| ITEM # | DESCRIPTION | COST CODE | QTY | UOM | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|
| | Quote 180227-BP-0662 revision 1 | 14014 | | | 1500/day | $ 7,500.00 |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | *FREIGHT EACH WAY* | | (2) | | $/1000 | $ - |
| | | | | | | |

| | | |
|---|---|---|
| **SUBTOTAL** | $ | 7,500.00 |
| **TAX – DURHAM CO, NC** | $ | 562.50 |
| **TOTAL AMOUNT** | $ | 8,062.50 |

Additional Notes:
1  Amounts indicated are estimated. Only those actually delivered will be invoiced.
2  Form of payment: Net 30 days from date of invoice reception
3  This Purchase Order supersedes all other previous Purchase Orders regarding the subject of this Purchase Order
   This Purchase Order is also subject to Terms & Conditions on the back.

Dragados USA, Inc.

By: _Matt Levey_

Title: _Dep PM_

Date: _6/18/18_

Vendor

By: _____

Title: _____

Date: _____

| Area Manager | Admin. Manager | Project Manager |
|---|---|---|
| | | |





PLAINTIFF'S
EXHIBIT
4

Invoice

| Date | Invoice # |
|------|-----------|
| 7/3/2018 | 4789 |

**Remit to:**
PO Box 1594
Shallotte, NC 28459

| Bill To | Ship To |
|---------|---------|
| **Dragados USA**<br>**7920 ACC Blvd Suite 210**<br>**Raleigh NC 27617** | 3217 Angier Ave<br>Durham NC<br>Buck Moore<br>919-717-1760 |

| P.O. No. | Terms |
|----------|-------|
| DUOP832 | Net 15 |

| Description | Qty | U/M | Rate | Amount |
|-------------|-----|-----|------|--------|
| 6.18.2018 | | | | |
| State transport permit | 1 | Rate | 75.00 | 75.00 |
| Transportation of Equipment- Freight In | 1 | Rate | 1,000.00 | 1,000.00 |
| Crane & Operator | 8 | | 350.00 | 2,800.00 |
| Operator Overtime - Weekday | 7.5 | Hourly Rate | 387.50 | 2,906.25 |
| Assembly-2 @ 8 Hours Each | 16 | Hourly Rate | 30.00 | 480.00 |
| Assembly Crew Overtime - Weekday 2 @ 7.5 Hours Each | 15 | Hourly Rate | 67.50 | 1,012.50 |
| Crew Travel time | 1 | Rate | 125.00 | 125.00 |
| Per Diem | 3 | Rate | 130.00 | 390.00 |
| Fuel surcharge | 8,323.75 | % | 0.05 | 416.19 |
| | | | | |
| 6.19.2018 | | | | |
| Crane & Operator | 8 | Hourly Rate | 350.00 | 2,800.00 |
| Operator Overtime - Weekday | 4.5 | Hourly Rate | 387.50 | 1,743.75 |
| Assembly-2 @ 8 Hours Each | 16 | Hourly Rate | 30.00 | 480.00 |
| Assembly Crew Overtime - Weekday 2 @ 4.5 Hours Each | 9 | Hourly Rate | 67.50 | 607.50 |
| Crew Travel time | 1 | Rate | 125.00 | 125.00 |

**Please Note: After 7 days NO Changes will be made to the invoice**

Terms of Payment: Full Payment for all charges is due upon billing. Accounts not paid within 30 days will be subject to a service charge of 1.5 % per month. This is an Annual Percentage Rate of 18%.

| | |
|--|--|
| Total | |
| Payments/Credits | |
| Balance Due | |

| Phone # | Fax # | E-mail |
|---------|-------|--------|
| 910-755-5668 | 910-754-9381 | office@bandbcraneservice.com |



Invoice

| Date | Invoice # |
|------|-----------|
| 7/3/2018 | 4789 |

**Remit to:**
PO Box 1594
Shallotte, NC 28459

**Bill To**

Dragados USA
7920 ACC Blvd Suite 210
Raleigh NC 27617

**Ship To**

3217 Angier Ave
Durham NC
Buck Moore
919-717-1760

| P.O. No. | Terms |
|----------|-------|
| DUOP832 | Net 15 |

| Description | Qty | U/M | Rate | Amount |
|-------------|-----|-----|------|--------|
| Transportation of Equipment- Freight Out | 1 | Rate | 1,000.00 | 1,000.00 |
| Fuel surcharge | 6,756.25 | % | 0.05 | 337.81 |

Please Note: After 7 days NO Changes will be made to the invoice

Terms of Payment: Full Payment for all charges is due upon billing. Accounts not paid within 30 days will be subject to a service charge of 1.5 % per month. This is an Annual Percentage Rate of 18%.

| | |
|---|---|
| Total | $16,299.00 |
| Payments/Credits | $0.00 |
| Balance Due | $16,299.00 |

| Phone # | Fax # | E-mail |
|---------|-------|--------|
| 910-755-5668 | 910-754-9381 | office@bandbcraneservice.com |

Page 2



Invoice

| | |
|---|---|
| **Remit to:**<br>PO Box 1594<br>Shallotte, NC 28459 | |

| Date | Invoice # |
|---|---|
| 7/3/2018 | 5811 |

**Bill To**

**Dragados USA**
**7920 ACC Blvd Suite 210**
**Raleigh NC 27617**

**Ship To**

3217 Angier Ave
Durham NC
Buck Moore
919-717-1760

| P.O. No. | Terms |
|---|---|
| DUOP832 | Net 15 |

| Description | Qty | U/M | Rate | Amount |
|---|---|---|---|---|
| 6.18.2018 Damages to Grove GMK5165 | | | | |
| Crane Parts | 1 | Rate | 14,055.88 | 14,055.88 |
| Labor | 1 | Rate | 2,950.00 | 2,950.00 |
| Down Time-Rate charged at static rate (per | 16 | Daily Rate | 2,500.00 | 40,000.00 |
| agreement) from day of damage until crane | | | | |
| is repaired, re-inspected for work. | | | | |
| 6.18.2018 day of damage- thru current date | | | | |
| 7.3.2018 further down days will be invoiced | | | | |
| Parts availability is 6-10 weeks out | | | | |

**Please Note: After 7 days NO Changes will be made to the invoice**

**Terms of Payment: Full Payment for all charges is due upon billing. Accounts not paid within 30 days will be subject to a service charge of 1.5 % per month. This is an Annual Percentage Rate of 18%.**

| Total | $57,005.88 |
|---|---|
| Payments/Credits | $0.00 |
| **Balance Due** | **$57,005.88** |

| Phone # | Fax # | E-mail |
|---|---|---|
| 910-755-5668 | 910-754-9381 | office@bandbcraneservice.com |

 

**Invoice**

| Date | Invoice # |
|------|-----------|
| 9/6/2018 | 5154 |

Remit to:
PO Box 1594
Shallotte, NC 28459

**Bill To**

**Dragados USA**
**7920 ACC Blvd Suite 210**
**Raleigh NC 27617**

**Ship To**

3217 Angier Ave
Durham NC
Buck Moore
919-717-1760

| P.O. No. | Terms |
|----------|-------|
| DYOP832 | Net 15 |

| Description | Qty | U/M | Rate | Amount |
|-------------|-----|-----|------|--------|
| Down Time-Rate charged at static rate (per agreement) from day of damage until crane is repaired, re-inspected for work. 7.4.2018 - thru current date 9.6.2018 further down days will be invoiced | 65 | Rate | 2,500.00 | 162,500.00 |

Please Note: After 7 days NO Changes will be made to the invoice

Terms of Payment: Full Payment for all charges is due upon billing. Accounts not paid within 30 days will be subject to a service charge of 1.5 % per month. This is an Annual Percentage Rate of 18%.

| Total | $162,500.00 |
|-------|-------------|
| Payments/Credits | $0.00 |
| Balance Due | $162,500.00 |

| Phone # | Fax # | E-mail |
|---------|-------|--------|
| 910-755-5668 | 910-754-9381 | office@bandbcraneservice.com |