IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-98-D

B & B CRANE SERVICE, LLC, )
)
        Plaintiff, )
)
v. )    **ORDER**
)
DRAGADOS USA, INC., et al., )
)
        Defendants. )

On April 11, 2019, B & B Crane Service, LLC ("B & B Crane" or "plaintiff") filed a complaint in Brunswick County Superior Court alleging breach of contract, negligence, and declaratory judgment claims against Dragados USA, Inc. ("Dragados") and "John Doe" [D.E. 1-1]. On May 15, 2019, Dragados removed the action to this court [D.E. 1]. On July 22, 2019, B & B Crane amended its complaint, adding Thomas Michael Keyes ("Keyes"; collectively, "defendants") as a defendant [D.E. 18]. On July 26, 2019, Dragados and Keyes moved to dismiss B & B Crane's amended complaint for failure to state a claim and for judgment on the pleadings [D.E. 22] and filed a memorandum in support [D.E. 23]. On the same date, Dragados and Keyes answered the amended complaint [D.E. 24]. On August 15, 2019, B & B Crane responded in opposition [D.E. 25]. On August 29, 2019, Dragados and Keyes replied [D.E. 26]. As explained below, the court grants in part and denies in part defendants' motion to dismiss.

I.

B & B Crane is a North Carolina limited liability company. See Am. Compl. [D.E. 18] ¶ 1. Dragados is a foreign business entity that does business in North Carolina. See id. ¶ 2. Don

"Buck" Moore ("Moore"), Matthew Levey ("Levey"), and Keyes were Dragados's agents or managers. See id. ¶ 3.[1] B & B Crane alleges that "John Doe" was "the employee and agent of Dragados who was designated by Keyes to serve as the flag or signal person for the job task to be performed by B & B [Crane] pursuant to its contract with Dragados." Id. ¶ 5.

On February 27, 2018, Dragados requested a quote from B & B Crane for leasing a crane, a qualified operator, pile hammer driver, leads, and other equipment for a construction project on an interstate highway in Durham, North Carolina. See id. ¶ 6. Moore and Bryan Powell ("Powell"), who worked for B & B Crane, then negotiated a second quote. See id. ¶ 7. Following negotiations, Moore provided information to B & B Crane concerning Dragados's desired pile hammer specifications and pile weights in order to enable B & B Crane to ensure that the crane's lifting capacity would meet industry safety standards. See id. On June 4, 2018, B & B Crane sent Dragados a second quote for a 42S Diesel Pile Hammer and submitted the weight and calculated lift capacity of the crane to the North Carolina Department of Transportation, as required by law. See id. ¶ 8. B & B Crane determined the appropriate calculations and obtained the necessary permits based on the information that Dragados provided about the project. See id. ¶ 9.

On June 11, 2018, defendants provided the specific weights and dimensions of the job-site requirements to B & B Crane so that it could calculate whether defendants' project needs were

---

[1] Although B & B Crane alleges that Keyes is a North Carolina resident, id. ¶ 4, the court analyzes whether diversity jurisdiction exists at the time of removal. See 28 U.S.C. §§ 1441(a), 1446; Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996); Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013); Moffitt v. Residential Funding Co., 604 F.3d 156, 159 (4th Cir. 2010). When Dragados removed the action to this court, B & B Crane had sued only Dragados—a foreign business entity—and "John Doe." However, in analyzing removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b). Thus, because the parties were completely diverse at the time of removal, this court has subject-matter jurisdiction over the case notwithstanding Keyes's citizenship.

within the capacity of the crane that B & B Crane would use. See id. ¶ 10. On June 12, 2018, Dragados requested the final quote. See id. ¶ 11. The final quote provided that B & B Crane would provide a crane and operator and that Dragados would prove a pile hammer and leads. See id. Thus, under the final quote, B & B Crane would furnish a crane, an operator, a truck and extendable trailer, and the personnel needed to assemble, disassemble, and transport the crane at the job-site. See id. ¶ 12. Dragados would furnish a signal person, a hammer, and leads. See id. B & B Crane alleges that Dragados agreed to select as a signal person only someone "trained, qualified, or certified in accordance with the applicable safety practices [and customs] applicable to the operation of a crane," including Occupational Safety and Health Administration ("OSHA") regulations. Id. ¶ 13.

During a safety meeting before the project, Keyes warned the team that there was a risk that the leads could become tangled with the rigging during the project. See id. ¶ 15. B & B Crane alleges that OSHA regulations authorize only the signal person to give signals to the crane operator during the operation of a crane unless an emergency situation arises. See id. ¶ 16.

On June 18 and 19, 2018, B & B Crane transported and assembled a crane at the job-site to perform the project. See id. ¶ 18. B & B Crane alleges that Dragados elected not to include any certified riggers and signal persons, but instead to use its own personnel. See id. ¶ 19. Thus, although the crane operator worked for B & B Crane, B & B Crane alleges that Dragados's signal person was solely responsible for monitoring the operation of the pile driving apparatus and to observe the cables in case an emergency arose. See id. On June 18, 2018, Dragados personnel told B & B Crane's crane operator not to do anything unless instructed to do so by Dragados's appointed signal person. See id. ¶ 20.

3

B & B Crane alleges that, during the project, "John Doe"—the person whom Dragados chose as a signal person—negligently failed to maintain a visual line of sight to ensure that the diesel pile hammer "was free and not subject to improper operation" or "hung up within the mechanism of the pile driving hammer apparatus." Id. ¶ 21. Thus, during a lift, the cables became tangled and B & B Crane's crane suffered extensive damage. See id. ¶¶ 21–22. Although B & B Crane offered to use a substitute crane, Dragados rejected that offer. See id. ¶ 23. The crane was out of service until it was repaired several months later. See id. ¶ 24. The total cost of the repairs and down time was $235,804.88. See id.; Ex. C [D.E. 18-3].

B & B Crane alleges that the "terms of the work document" that Keyes signed on June 18, 2018, states that in the event of damage to the crane, "the Lessee shall notify Lessor in writing within 48 hours of its occurrence, specifying the extent and nature of the accident or damage. The cost of any repair necessary to restore the equipment to said condition shall by paid by Lessee." Am. Compl. ¶ 17; see Ex. B [D.E. 18-2] 2. B & B Crane invoiced Dragados for the cost of the repairs to its crane, but Dragados has refused to pay those costs. See Am. Compl. ¶¶ 24–25. B & B Crane now alleges that defendants are liable for breach of contract and negligence and seeks damages and declaratory relief. See id. ¶¶ 26–37.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, plaintiffs' allegations must "nudge[] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant the motion if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). A court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

551 U.S. 308, 322 (2007). The same standard applies under Rule 12(c) and Rule 12(b)(6). See Mayfield, 674 F.3d at 375; Burbach Broad. Co., 278 F.3d at 405–06.

Subject-matter jurisdiction is based on diversity of citizenship, and the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

6

A.

To state a claim for breach of contract under North Carolina law, B & B Crane must plausibly allege (1) the existence of a valid contract and (2) a breach of the terms of the contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Cater v. Barker, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). A breach of contract occurs when there is "non-performance, unless the person charged shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016) (alterations and quotations omitted), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished); see City of Fayetteville v. Sec. Nat'l Ins. Co., No. 5:18-CV-331-D, 2019 WL 3315201, at *4 (E.D.N.C. July 23, 2019) (unpublished); Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 572 (E.D.N.C. 2019); Cater, 172 N.C. App. at 447, 617 S.E.2d at 117. Dragados argues that B & B Crane has not plausibly alleged that Dragados breached the terms of any contract.

B & B Crane has plausibly alleged the existence of a valid contract and a breach of those terms. See Am. Compl. ¶¶ 26–28.[3] Accordingly, the court denies Dragados's motion to dismiss the breach of contract claim for failure to state a claim.

B.

To state a claim for negligence under North Carolina law, B & B Crane must plausibly allege that "(1) defendant failed to exercise due care in the performance of some legal duty owed

---

[3]While plaintiff misnumbers the amended complaint, this citation references the allegations in plaintiff's first cause of action.

7

to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E.2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013). Defendants argue North Carolina's economic loss rule defeats this claim.

Under North Carolina's "economic loss rule," a plaintiff generally cannot recover in tort for purely economic loss where a contract, a warranty, or the UCC operates to allocate risk. See Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018); Kelly v. Ga.-Pac. LLC, 671 F. Supp. 2d 785, 791–92 (E.D.N.C. 2009); N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81–82, 240 S.E.2d 345, 350–51 (1978), rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230, 328 S.E.2d 274 (1985); Beaufort Builders, Inc. v. White Plains Church Ministries, Inc., 246 N.C. App. 27, 33, 783 S.E.2d 35, 39 (2016); Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635, 639, 643 S.E.2d 28, 30–31 (2007); Moore v. Coachmen Indus., Inc., 129 N.C. App. 389, 401–02, 499 S.E.2d 772, 780 (1998). No tort action lies "against a party to a contract who . . . fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract." Lord, 182 N.C. App. at 639, 643 S.E.2d at 30–31 (quotation omitted); see Legacy Data Access, Inc., 889 F.3d at 164; Kelly, 671 F. Supp. 2d at 791–92; Rountree v. Chowan Cty., 796 S.E.2d 827, 830 (N.C. Ct. App. 2017); Beaufort Builders, Inc., 246 N.C. App. at 33, 783 S.E.2d at 39.

The policy underlying the economic loss rule is that "the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights

8

and remedies." Moore, 129 N.C. App. at 401, 499 S.E.2d at 780; see Kelly, 671 F. Supp. 2d at 791–92; Lord, 182 N.C. App. at 639, 643 S.E.2d at 30. The rule reflects the fundamental differences between the goal of awarding damages in tort law (i.e., to compensate the victim and punish the wrongdoer for the tort) and the goal of awarding damages in contract law (i.e., to compensate the injured party for the breach). See Strum v. Exxon Co., USA, 15 F.3d 327, 330 (4th Cir. 1994). Thus, the rule confines parties to a contract's terms should a party seek redress concerning the contract. See Crop Prod. Servs., Inc. v. Ormond, No. 4:11-CV-41-D, 2012 WL 147950, at *7 (E.D.N.C. Jan. 18, 2012) (unpublished).

North Carolina courts recognize limited exceptions to the economic loss rule. See, e.g., Ellis v. La.-Pac. Corp., 699 F.3d 778, 783–84 (4th Cir. 2012). If a defendant owed a duty independent of and distinguishable from a duty owed by contract, then a plaintiff can recover in both tort and contract for the same course of conduct. See Strum, 15 F.3d at 330–31; Kelly, 671 F. Supp. 2d at 791. In other words, "where there is an identifiable tort even though the tort also constitutes, or accompanies, a breach of contract, the tort itself may give rise to a claim." Newton v. Standard Fire Ins. Co., 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976). Aggravating elements (e.g., fraud, malice, reckless indifference, or oppression) also must accompany the allegedly tortious conduct. See Strum, 15 F.3d at 331; Newton, 291 N.C. at 112, 229 S.E.2d at 301. To determine whether an exception to the economic loss rule applies, courts focus on whether the plaintiff has plausibly alleged a duty that exists independently of a duty arising from a contract. See Legacy Data Access, Inc., 889 F.3d at 165–66; Rountree, 796 S.E.2d at 830–32; Croker v. Yadkin, Inc., 130 N.C. App. 64, 69, 502 S.E.2d 404, 407 (1998).

As for B & B Crane's negligence claim, B & B Crane alleges that Keyes negligently chose "John Doe" as the signal person and that "John Doe" was not qualified or trained to be a signal

9

person "as necessary to comply with the applicable OSHA [regulations] and appropriate safety requirements and standards, together with the contractual provisions set forth in the contract." Am. Compl. ¶¶ 30–31. Thus, B & B Crane does not plausibly allege a legal duty independent of defendants' duties under the contract. Moreover, section 3 of the contract expressly provides a remedy in the event of damage to B & B Crane's equipment. See Ex. B [D.E. 18-2] 2. Thus, B & B Crane's contract expressly allocated to Dragados the risk of damage to its crane. Accordingly, North Carolina's economic loss rule applies, and the court grants defendants' motion to dismiss B & B Crane's negligence claim.

C.

As for B & B Crane's declaratory judgment claim, whether to provide declaratory relief is committed to a trial court's discretion. See 28 U.S.C. § 2201(a); Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 F. App'x 698, 701 (4th Cir. 2009) (per curiam) (unpublished); New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 296–97 (4th Cir. 2005); Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998). B & B Crane's declaratory judgment claim duplicates its other claims. Accordingly, the court exercises its discretion and dismisses this claim.

III.

In sum, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss [D.E. 22]. Specifically, the court DENIES defendants' motion to dismiss plaintiff's breach of contract claim, GRANTS defendants' motion to dismiss plaintiff's negligence claim, GRANTS defendants' motion to dismiss plaintiff's declaratory judgment claim, and DISMISSES Keyes and "John Doe" as defendants from this action. The parties shall participate in a court-hosted settlement conference with United States Magistrate Judge Gates.

SO ORDERED. This 18 day of October 2019.

                                                        JAMES C. DEVER III  
                                                        United States District Judge